# EXHIBIT "A"

 **ALEX SINK**
**CHIEF FINANCIAL OFFICER**
**STATE OF FLORIDA**
Florida Department of Financial Services


10-41012

---

NRI 3 LLC A/K/A NRI THREE LLC

PLAINTIFF(S),

VS.

LANTANA INSURANCE LTD

DEFENDANT(S).

_____/

SUMMONS, COMPLAINT, EXHIBITS, DISCOVERY

CASE #:    10-36465 CA 04
COURT:    CIRCUIT COURT
COUNTY:   MIAMI-DADE
DFS-SOP#: 10-41012

## NOTICE OF SERVICE OF PROCESS

NOTICE IS HEREBY GIVEN of acceptance of Service of Process by the Chief Financial Officer of the State of Florida. Said process was received in my office by PROCESS SERVER on the 6th day of July, 2010 and a copy was forwarded by Electronic Delivery on the 12th day of July, 2010 to the designated agent for the named entity as shown below.

> LANTANA INSURANCE LTD
> THOMAS M DAWSON  (tdawson@dl.com)
> DEWEY & LEBOUEF LLP
> 125 WEST 55TH STREET
> NEW YORK, NY  10019

\* Our office will only serve the initial process (Summons and Complaint) or Subpoena and is not responsible for transmittal of any subsequent filings, pleadings or documents unless otherwise ordered by the Court pursuant to Florida Rules of Civil Procedure, Rule #1.080.

*Alex Sink*

Alex Sink
Chief Financial Officer

cc to: *Plaintiff's Representative for filing in appropriate court:*

MICHAEL J. HIGER
18305 SO. BISCAYNE BLVD., SUITE 402                    CJW
AVENTURA FL 33160

**ALEX SINK**
**CHIEF FINANCIAL OFFICER**
**STATE OF FLORIDA**
Florida Department of Financial Services



10-41012

---

NRI 3 LLC A/K/A NRI THREE LLC

PLAINTIFF(S),

VS.

LANTANA INSURANCE LTD

DEFENDANT(S).

_____/

SUMMONS, COMPLAINT, EXHIBITS, DISCOVERY

CASE #:   10-36465 CA 04
COURT:   CIRCUIT COURT
COUNTY:   MIAMI-DADE
DFS-SOP#: 10-41012

## NOTICE OF SERVICE OF PROCESS

NOTICE IS HEREBY GIVEN of acceptance of Service of Process by the Chief Financial Officer of the State of Florida. Said process was received in my office by PROCESS SERVER on the 6th day of July, 2010 and a copy was forwarded by Electronic Delivery on the 12th day of July, 2010 to the designated agent for the named entity as shown below.

    LANTANA INSURANCE LTD
    THOMAS M DAWSON  (tdawson@dl.com)
    DEWEY & LEBOUEF LLP
    125 WEST 55TH STREET
    NEW YORK, NY  10019

\* Our office will only serve the initial process (Summons and Complaint) or Subpoena and is not responsible for transmittal of any subsequent filings, pleadings or documents unless otherwise ordered by the Court pursuant to Florida Rules of Civil Procedure, Rule #1.080.

Alex Sink
Chief Financial Officer

cc to: *Plaintiff's Representative for filing in appropriate court:*

MICHAEL J. HIGER
18305 SO. BISCAYNE BLVD., SUITE 402
AVENTURA FL 33160

CJW

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

NRI 3 LLC a/k/a NRI THREE LLC,

GENERAL JURISDICTION DIVISION

Plaintiff,

CASE NO.:       10-36465CA04

vs.

**SUMMONS**

LANTANA INSURANCE LTD,

Defendant.

_____/

THE STATE OF FLORIDA:
To Each Sheriff of Said State:

YOU ARE HEREBY COMMANDED to serve this summons, a copy of the
Complaint and of Plaintiff's First Request for Production to Defendant in this action
on defendant:

    **LANTANA INSURANCE LTD**
    **c/o FLORIDA CHIEF FINANCIAL OFFICER, as Registered Agent**
    **SERVICE OF PROCESS SECTION**
    **P.O. BOX 6200**
    **TALLAHASSEE, FL 32314-6200**

Each defendant is required to serve written defenses to the complaint on Plaintiff's
attorney, to-wit: **Michael J. Higer, Esquire** whose address is: **HIGER, LICHTER &
GIVNER, LLP, 18305 Biscayne Blvd., Suite 402, Aventura, FL 33160** within 20
days after service of this summons on that defendant, exclusive of the day of service,
and to file the original of the defenses with the Clerk of this Court either before
service on Plaintiff's attorney or immediately thereafter. If a defendant fails to do
so, a default will be entered against that defendant for the relief demanded in the
complaint or petition.

DATED ON JUL 01 2010_____, 2010.

          **HARVEY RUVIN**
          as Clerk of said Court

          ALBA DE LA SIERRA
          as Deputy Clerk
          (Court Seal)

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL COURT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

NRI 3 LLC a/k/a NRI THREE LLC,

GENERAL JURISDICTION DIVISION

     Plaintiff,

CASE NO.: 10-36465 CA 04

v.

LANTANA INSURANCE LTD,

     Defendant.

_____/

Please Stamp and Return
THE ORIGINAL FILED

ON   JUL 0 1 2010

IN THE OFFICE OF
CIRCUIT COURT DADE CO F
CIVIL DIVISION

## COMPLAINT

Plaintiff, NRI 3 LLC a/k/a NRI Three LLC ("NRI"), hereby sues Defendant, Lantana Insurance LTD (the "Insurance Company"), and alleges:

1.    This is an action for damages in excess of $15,000.00 exclusive of interest, costs and attorneys' fees.

2.    At all material times, NRI was and is a Florida limited liability company doing business in Miami-Dade County, Florida.

3.    At all material times the Insurance Company was an eligible surplus lines insurer in the business of selling property and casualty insurance in Florida, however, the Insurance Company is not currently authorized by the State of Florida to conduct business in Florida.

4.    At all material times, NRI entered into an insurance contract with the Insurance Company bearing policy number PES00006 (the "Policy") which provided property insurance for NRI's properties located at 18441 NW 2nd Avenue, Miami, FL 33169 ("18441 Building"), 18425 NW 2nd Avenue, Miami, FL 33169 ("18425 Building"), &

1

18475 NW 2nd Avenue, Miami, FL 33169 ("18475 Building"), and 111 NW 183rd Street, Miami, FL 33169 ("111 Building") (collectively referred to as the "Property").   A true and correct copy of the Policy is attached as Exhibit A.

5.      The Policy provided for insurance coverage for the Property for a period from September 15, 2005 through September 16, 2006.

6.      On or about October 24, 2005, Hurricane Wilma substantially damaged the Property.

7.      The Policy provided coverage for all of the losses, damages and expenses that NRI suffered and incurred.

8.      In accordance with the terms and conditions of the Policy, NRI gave the Insurance Company prompt and timely notice of its claim.

9.      The Insurance Company acknowledged NRI's claim and assigned it claim number 54CAT20051464.

10.     On July 2, 2006, the Insurance Company sent NRI a letter denying NRI's claim and refused payment based on its denial.   A true and correct copy of the Insurance Company's denial letter is attached as Exhibit B.

11.     More specifically, the Insurance Company denied NRI's claim alleging that the damages to the 18441, 18425 and 111 Buildings were under the deductible, and alleging that the fourth building that made-up NRI's Property (the building identified in the policy as the 18475 Building) "was not an insured structure."

12.     NRI's Property was purchased together in a single sale on September 16, 2005, and the legal description and linked to the 18441, 18425 and 18475 Buildings are

2

Higer Lichter & Givner

all included in the legal description linked of the 18441 Building in the public records. A copy of the legal description for the Property is attached as Exhibit C.

13.    The Insurance Company knew the location and legal description of the Property that it was insuring under the Policy because NRI provided its purchase and sale documents to the Insurance Company when it was seeking insurance.

14.    After October 24, 2005, the U.S. Postal Service advised NRI that the legal address for the 18475 Building was 18405, and NRI requested that the Insurance Company revise the Policy to accurately reflect the legal address of the 18475 Building.

15.    The Insurance Company maintains that the 18475 Building is not covered under the Policy despite the fact that the legal description for the 18475 Building (whether the legal address was 18475 NW 2nd Avenue or 18405 NW 2nd Avenue) is included with the legal description of the 18441 Building, and for which the Insurance Company acknowledges the Policy provides coverage.

16.    To date, the Insurance Company has failed to issue payment to NRI for the losses that it suffered to its Property.

17.    NRI has complied with all terms and conditions of the Policy and all conditions precedent to the bringing of the instant action have been performed, waived or excused.

18.    NRI hired undersigned counsel to represent it in this action and is obligated to pay its attorneys a reasonable fee for their services.

19.    Pursuant to Chapter 627.428, Florida Statutes, NRI is entitled to recover the legal fees incurred in bringing this action.

Higer Lichter & Givner

## COUNT I
## BREACH OF CONTRACT

20.    NRI adopts and realleges paragraphs 1 – 19 above.

21.    By failing to pay NRI for the damages as a result of the loss that it suffered to its Property, and by claiming that the Policy does not provide coverage for the 18475 Building (whether the legal address was 18475 NW 2nd Avenue or 18405 NW 2nd Avenue), the Insurance Company has breached the Policy.

22.    As a result of the Insurance Company's breach of the Policy, NRI has suffered damages, exclusive of costs and fees, in excess of the jurisdictional limits of this Court.

**WHEREFORE**, NRI demands entry of a judgment in its favor and against Defendant for damages in excess of the jurisdictional limits of this Court, together with pre-and post-judgment interest, attorney's fees, costs and such other relief as the Court deems just and proper.

### COUNT II - PETITION TO APPOINT UMPIRE AND TO COMPEL APPRAISAL

23.    NRI adopts and realleges paragraphs 1-19 above.

24.    The Policy has an appraisal provision which provides that either party may demand appraisal if the parties disagree on the amount of the loss.

25.    In accordance with the terms and conditions of the Policy, Plaintiff has demanded appraisal.

26.    The Insurance Company refused to participate in the appraisal process on all of NRI's Property because the Insurance Company claims that the Policy does not

4

Higer Lichter & Givner

provide coverage for the 18475 Building.

27.    Because it is clear that the Policy provides coverage for NRI's Property, including the 18475 Building (whether the legal address was 18475 NW 2nd Avenue or 18405 NW 2nd Avenue), and because there is a disagreement as to the amount of NRI's damages, the Court should compel appraisal to determine the amount of NRI's loss.

**WHEREFORE**, NRI demands entry of an Order:

A.    Compelling appraisal to determine the amount of Plaintiff's losses to the Property as a result of the damage from Hurricane Wilma;

B.    Appointing a neutral appraiser;

C.    Staying this action pending completion of appraisal; and

D.    Reserving jurisdiction to confirm the appraisal award, to award attorney's fees, to award pre- and post-judgment interest, and to award such other relief as this Court deems just and proper.

**COUNT III**
**REFORMATION – MUTUAL MISTAKE (AS AN ALTERNATIVE TO COUNT IV)**

28.    NRI adopts and realleges paragraphs 1 – 19 above.

29.    NRI and the Insurance Company believed that the Policy contained coverage for NRI's Property that was purchased on September 16, 2005, which included coverage for the 18475 Building that the U.S. Postal Service subsequently advised NRI had a legal address of 18405 (not 18475).

30.    NRI's Property was purchased together in a single sale on September 16, 2005, and the legal description for the 18441, 18425 and 18475 Buildings are all

5

Higer Lichter & Givner

included in the legal description linked to the 18441 Building in the public records. *See* Ex. C.

31.    The Insurance Company denied coverage to NRI claiming that the Policy did not cover the building identified in the Policy as the 18475 Building, but which was later updated with a legal address of 18405.

32.    Any failure of the Policy to provide coverage for the 18475 Building (whether the legal address was 18475 NW 2nd Avenue or 18405 NW 2nd Avenue) was as a result of a mutual mistake as to the proper legal address of the 18475 Building.

33.    The Policy as drafted, which includes coverage for the 18475 Building, fails to express the agreement of the parties that the Insurance Company would cover NRI's Property purchased on September 16, 2005.

34.    If the Policy does not provide coverage for the 18475 Building – now identified with a legal address of 18405, then the Policy does not express the intent of the parties in contracting for the Policy.

35.    Accordingly, the Court should reform the Policy to reflect the intent of the parties to the Policy.

**WHEREFORE**, NRI demands reformation of the Policy to include coverage for the 18475 Building, attorney's fees, costs and such other relief as the Court deems just and proper.

**COUNT IV**
**REFORMATION – UNILATERAL MISTAKE (AS AN ALTERNATIVE TO COUNT III)**

36.    NRI adopts and realleges paragraphs 1 – 19 above.

6

Higer Lichter & Givner

37.   NRI believed that the Policy contained coverage for NRI's Property that was purchased on September 16, 2005, which included coverage for the 18475 Building that the U.S. Postal Service subsequently advised NRI had a legal address of 18405 (not 18475).

38.   NRI's Property was purchased together in a single sale on September 16, 2005, and the legal description for the 18441, 18425 and 18475 Buildings are all included in the legal description linked to the 18441 Building in the public records. *See* Ex. C.

39.   The Insurance Company denied coverage to NRI claiming that the Policy did not cover the building identified in the Policy as the 18475 Building, but which was later updated with a legal address of 18405.

40.   Any failure of the Policy to provide coverage for the 18475 Building (whether the legal address was 18475 NW 2nd Avenue or 18405 NW 2nd Avenue) was as a result of a unilateral mistake on NRI's part as to the proper legal address of the 18475 Building.

41.   The Insurance Company knew or should have known that no building existed with a legal address of 18475 NW 183rd Street, and that the Insurance Company was insuring and charging NRI a premium for a building that did not exist.

42.   The Insurance Company failed to inform NRI that it was collecting a premium for a building that did not exist.

43.   The Policy as drafted, which includes coverage for the 18475 Building, fails to express the agreement that the Insurance Company would cover NRI's Property

7

Higer Lichter & Givner

purchased on September 16, 2005.

44.     If the Policy does not provide coverage for the 18475 Building – now identified with a legal address of 18405, then the Policy does not express the intent of NRI in contracting for the Policy.

45.     Accordingly, the Court should reform the Policy to reflect the intent of NRI in purchasing and paying for the Policy.

**WHEREFORE**, NRI demands reformation of the Policy to include coverage for the 18475 Building, attorney's fees, costs and such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues so triable as a matter of right.

Dated: July 1st, 2010.

> Higer Lichter & Givner, LLP
> *Attorneys for Plaintiff*
> 18305 Biscayne Blvd., Suite 402
> Aventura, FL 33160
> Telephone: 305-933-9970
> Facsimile : 305-933-0998
>
>
> By:_____
>     Michael J. Higer
>     Florida Bar No. 500798
>     Valorie S. Chavin
>     Florida Bar No. 14226

8

Higer Lichter & Givner



**Policy Number: PES-00006**

Renaissance House
East Broadway
P.O. Box HM 2527
Hamilton HMGX, Bermuda
Phone 441-296-3235
Fax 441-295-4029

**Lantana Insurance Ltd.**
Part of the Glencoe Group

Administrative Office:
5080 Spectrum Drive
Suite 900 East
Addison, TX 75001
Phone 972.664.7000
Fax 972.994.9746

## COMMON POLICY DECLARATIONS

Named Insured and Mailing Address:

NRI Three LLC
633 NE 167th St, Suite 301
North Miami Beach, FL 33162

Producer Name and Address:
Program Underwriters, Inc.
3700 Coconut Creek Pkwy, #200
Coconut Creek, FL 33066

Policy Period:
From:    September 16, 2005        To:    September 16, 2006        Term:    12 months
12:01 AM, Standard Time at your mailing address

This policy consists of the following coverage per the attached form. This premium may be subject to adjustment.

| | |
|---|---|
| Limit of Liability: | $5,000,000 Per Occurrence (See attached Schedule of Locations/ Limits Endorsement) |
| Perils Insured: | Wind and Hail Only |
| Property Covered: | Real, Personal, Business Income with Extra Expense |
| Total Insured Value: | $9,955,000 |
| Coinsurance: | See attached Schedule of Locations/ Limits Endorsement |
| Valuation: | Replacement Cost if actually replaced, otherwise Actual Cash Value |
| Underlying Deductibles: | 5% Values at Risk At the Time of Loss Per Location ($50,000 minimum) |
| Covered Locations(s): | As per schedule attached |

TOTAL ADVANCE PREMIUM (not including applicable taxes & fees)        $38,512 Minimum Earned

Form(s) and Endorsement(s) made a part of this policy at time of issue: Named Wind Declarations (PES-NW 105 10 05), Named Wind Policy Form (PES-NW 100 10 05), Mortgagee Endorsement (PES-NW-130 10 05), Schedule of Locations Endorsement (PES-NW 190 10 05), General Endorsement – Wind and Hail (PES –NW 180 10 05)

Countersigned:

Date:    November 15, 2005                By: _____
                                                (Authorized Representative)

Countersigned by Savannah Reinsurance Underwriting Management LLC on behalf of Lantana Insurance Ltd.

THIS COMMON POLICY DECLARATIONS PAGE IS ATTACHED TO AND FORMS A PART OF THE POLICY ISSUED TO THE ABOVE NAMED INSURED, AND IS SUBJECT TO THE TERMS, LIMITATIONS, EXCEPTIONS AND CONDITIONS OF SUCH POLICY.



**EXHIBIT A**

This insurance is issued pursuant to the Florida Surplus Lines Law. Persons insured by Surplus Lines carriers do not have the protection of the Florida Insurance Guaranty Act to the extent of any right of recovery for the obligation of an insolvent unlicensed insurer. Stephen Buto, Surplus Lines Agent, I.D. #A037068, 3700 Coconut Creek Parkway, Coconut Creek, FL 33066-1616

Policy Form PES-NW 105 10 05

# Named Windstorm Policy

Policy Number: PES-00006

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

NOTICE: The premium payable under this policy does not include any amount with respect to any insurance premium tax, franchise tax or excise tax. It shall be the sole obligation of you or your representative to pay any and all of such taxes that are applicable to this policy, in addition to the premium, and we shall have no obligation whatsoever to pay any such taxes. We shall be entitled to full indemnification from you for all amounts incurred by us (including any and all costs, including our attorneys' fees) in the event any governmental authority shall seek payment from us, or our agents of any such tax.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to Lantana Insurance Ltd., the Company providing this insurance.

Other words and phrases that are not otherwise defined in this policy appear in quotation marks and have a specific meaning. Refer to SECTION F DEFINITIONS for the definition of such terms.

## SECTION A. PROPERTY INSURANCE

### 1. SCOPE OF INSURANCE

   a. Subject to the limits set forth in the Declarations and the provisions of this policy, we will pay for physical loss of or damage to covered property, as defined below, at the "Covered Location(s)" if and to the extent such physical loss or damage is caused directly by a "Named Storm" that occurs during the policy period (herein referred to as an "Occurrence"). We will only pay for such direct physical loss or damage that actually takes place during the 72 hour period following the commencement of the Occurrence.

   b. For the purposes of this policy, a Named Storm that affects more than one Covered Location shall be deemed a single Occurrence. Our limit of liability in respect of such Named Storm shall be limited to our limit for a single Occurrence, irrespective of the number of Covered Locations listed in the Declarations. We will not pay for any physical loss of or damage to Covered Property if such physical loss or damage is not visible immediately following the 72 hour period. Physical loss or damage that takes more than the 72 hour period to become apparent, or to have an immediate, noticeable effect, without the use of any equipment or device, is not covered by this policy.

   c. For the purposes of determining the amount of our liability under this policy, an Occurrence that affects more than one Covered Location shall be deemed a single Occurrence. Our limit of liability in respect of such Occurrence shall be limited to our limit for a single Occurrence, irrespective of the number of Covered Locations that are damaged by the Occurrence.

   d. Each Named Storm shall constitute a single Occurrence hereunder. The Company shall not be liable for any loss caused by any Named Storm occurring before the effective date and time of this

Policy Number: PES-00006

policy, nor for any loss occurring after the expiration date of this policy as a result of any Named Storm occurring prior to the expiration date.

e. The most we will pay under this policy for loss or damage caused by any one Occurrence is the per Occurrence Limit of Insurance stated in the Declarations. This policy shall be excess of any underlying limits of insurance or underlying primary or excess policies stated in the declarations.

f. The most we will pay under this policy for loss or damage at any Covered Location is the Limit of Insurance shown in the Declarations, as amended by the most recent "Statement of Values" on file with us, for such Covered Location. We will not pay for loss or damage until the amount of loss or damage exceeds the Deductible(s) shown in the Declarations page. We will then pay the amount of loss or damage in excess of the Deductible, up to the applicable Limit of Insurance.

g. This Policy only applies to Covered Locations identified in the Schedule of Locations attached to the Declarations, as may be amended from time to time by an endorsement to this policy. There is no automatic coverage under this policy for locations you acquire after commencement of the policy period. There will be no coverage for such locations unless agreed to in writing by us in an endorsement attached to this policy, and subject also to your payment in full of the applicable additional premium, as determined by us. We shall have no obligation to accept such additional locations, and we may decline to insure them for any reason or for no reason.

h. We will have no liability under this policy unless you pay, when due, all premiums required under this policy.

2. PROPERTY COVERED BY THIS POLICY

Except to the extent described in Section 2, Property Not Covered by This Policy, this policy provides insurance coverage for the following types of property while at Covered Locations, but only if and to the extent a Limit of Insurance is shown in the Declarations:

a. Your building(s), meaning the building(s) or structure(s) at Covered Locations, including:

    (1) Completed additions;
    (2) Permanently installed machinery, and equipment;
    (3) Fixtures, including outdoor fixtures;
    (4) Personal property owned by you that is used to maintain or service the building or structure or its premises, including:
        (a) Fire extinguishing equipment;
        (b) Floor coverings; and
        (c) Appliances used for refrigerating, ventilating, cooking, dish washing or laundering.
    (5) If not covered by any other insurance:
        (a) Additions under construction, alterations and repairs to the building or structure;
        (b) Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the building structure.

Policy Number:  PES-00006

    (1)  Are licensed for use on public roads; or
    (2)  Are operated principally away from the described premises.

o.  Outdoor fences, radio or television antennas (including satellite dishes), including their lead-in wiring, masts or towers, signs (other than signs attached to buildings), trees, shrubs or plants;

p.  Property you have sold after it has been delivered to you. This includes property sold under conditional sales, trust agreements, installment payment plans or other deferred payment plans;

q.  Property in transit;

r.  Steam boilers, steam pipes, steam turbines, or steam engines owned or operated by you if their bursting, rupture, or explosion causes loss or damage;

s.  Machines or machinery of loss or damage by rupturing, bursting or disintegrating or rotating or moving parts;

t.  Contractors' equipment;

u.  Jewelry, watches, pearls, precious and semi-precious stones, gold silver, platinum, other precious metals or alloys, bullion, furs and articles trimmed with fur;

v.  Fine arts, meaning paintings, etchings, pictures, tapestries, rare or art glass, art glass windows, valuable rugs, statuary, sculptures, "antique" furniture, "antique" jewelry, bric-a-brac, porcelains, and similar property or rarity, historical values, or artistic merit;

w.  Property in course of construction, including construction materials or supplies;

x.  Power transmission and/or feeder lines not on the insured premises;

y.  Land, including land on which the property is located, land values, growing crops or lawns, or the cost of excavations, grading or filling;

z.  Underground or surface water;

aa. Exported or imported property that is covered under any ocean marine cargo insurance policy or any similar policy that anyone has obtained covering exports and imports.

bb. Property owned by any person or entity other than you, including such property in your care, custody, or control at the time of an Occurrence.

4. <u>BUILDING AND PERSONAL PROPERTY COVERAGE EXTENSIONS</u>

Except as otherwise provided in this policy, including the exclusions set forth in Section D. Exclusions, the following Coverage Extensions apply to this policy. Where indicated Coverage Extensions require and are subject to the payment of an additional premium.

a.  <u>Debris Removal</u>

We will pay your reasonable expense to remove debris of Covered Property following an Occurrence. The expenses will be paid only if they are reported to us in writing within 60 days of the date of the Occurrence. The most we will pay under this Coverage Extension is 25% of the sum of:

    (1)  The amount we pay for the direct physical loss of or damage to the Covered Property; plus
    (2)  The deductible in this policy applicable to that loss or damage.
    (3)  This Coverage Extension does not apply to costs to

        (a)  Extract 'pollutants' from land or water; or
        (b)  Remove, restore or replace polluted land or water; or
        (c)  Any other environmental clean-up or related costs or Environmental remediation Costs.

Policy Number: PES-00006

b. <u>Preservation of Property</u>

In the event you move Covered Property from a Covered Location to another location solely for the purpose of reducing loss or damage from an approaching Named Storm that has been forecast as imminent by the U.S. National Weather Service, we will pay for loss or damage to such Covered Property that is caused by the Named Storm while in transit to or at the other location.

c. <u>Valuable Papers and Records - Cost of Research</u>

Upon payment of an additional premium, you may extend the insurance that applies to your Business Personal Property to apply to your costs to research, replace or restore the lost information on lost or damaged valuable papers and records, including those which exist on electronic or magnetic media, and for which duplicates do not exist. The most we will pay under this Coverage Extension is $1,000 per Covered Location.

d. <u>Appurtenant Buildings and Structures</u>

Upon payment of an additional premium, you may extend the insurance that applies to the Building(s) and to Business Personal Property to cover direct loss or damage to buildings or structures other than those at the Covered Locations if such buildings or structures are within 100 feet of the Covered Location(s) and are used in connection with the purposes for which the buildings and structures at the Covered Locations are used. The most we will pay under this Coverage Extension is an amount equal to 5% of the limit of insurance for the Building(s) and an amount equal to 5% of the limit of liability for Business Personal Property shown in the Declarations, but in no event more than $5,000 in respect of each additional building or structure.

e. <u>Demolition and Increased Cost of Construction</u>

Upon payment of an additional premium, you may extend the insurance that applies to the Building(s) and to Business Personal Property to cover:
  (1) loss occasioned by the enforcement of any federal, state, or municipal law or ordinance regulating the construction or repair of buildings or structures in effect at the time the Occurrence, which necessitates rebuilding the demolished portion of the insured Building(s) which have not previously suffered damage; however, we will not pay for any increased cost of construction loss unless the damaged Building(s) are actually rebuilt or replaced;
  (2) the full cost of rebuilding both the damaged and demolished portions of such Building(s) with materials and in a manner to fully satisfy such ordinance or law;
  (3) subject to the provisions of Section B of this policy, any increase in the Business Income and Extra Expense loss arising out of the additional time required to comply with such law or ordinance; and
  (4) the cost of demolishing the undamaged property including the cost of clearing the site. This Coverage Extension excludes:
      (a) demolition or increased cost of repair or reconstruction, debris removal or loss of use caused by the enforcement of any law or ordinance regulating Asbestos,

)                                                          )

Policy Number:  PES-00006

    (b) any governmental direction or request declaring that Asbestos present in or part of or utilized on any undamaged portion of insured property can no longer be used for the purpose for which it was intended or installed and must be removed or modified.

    If you purchase the Demolition and Increased Cost of Construction Coverage Extension, Exclusion 1.a in Section D of this policy will not be applicable.

## 5.  LOSS PAYMENT – ACTUAL CASH VALUE

Subject to the applicable Limits of Insurance and also subject to any coinsurance percentage stated in the Declarations, the amount we will pay for direct physical loss or damage to covered property caused by an Occurrence is limited to its Actual Cash Value, defined as the amount which it would cost to repair or replace damaged property with material of like kind and quality, less allowance for physical deterioration and depreciation, including obsolescence, at the time of the Occurrence, subject to the following:

a. In the event of loss or damage to covered property, at our option, we will either:
    (1) Pay the Actual Cash Value of lost or damaged covered property;
    (2) Pay the cost of repairing or replacing the lost or damaged covered property;
    (3) Take all or any part of the covered property at an agreed or appraised value; or
    (4) Repair, rebuild or replace the covered property with other property of like kind and quality.

b. We will give you notice of our intentions within 30 days after we receive your sworn statement in proof of loss.

c. We will not pay you more than your financial interest in the covered property.

d. We shall have no liability to defend you against any claims or suits arising from claims of owners of any property.

e. We will pay for covered loss or damage within 30 days after we receive your sworn statement in proof of loss, if you have complied with all of the terms of this policy; and
    (1) We have reached agreement with you on the amount of loss; or
    (2) An appraisal award has been made.

f. In the event we elect to pay the cost of repairing or replacing the lost or damaged covered property we will pay such amount within 60 days after we receive your sworn statement in proof of loss, if you have complied with all of the terms of this policy; and
    (1) We have reached agreement with you on the amount of loss; or
    (2) An appraisal award has been made.

g. In the event we elect to take all or any part of the covered property at an agreed or appraised value, we will do so within 60 days after we receive your sworn statement in proof of loss, if you have complied with all of the terms of this policy.

Policy Number:  PES-00006

h. In the event we elect to repair, rebuild or replace the covered property with other property of like kind and quality, we will commence such repair, rebuilding, or replacement within 90 days after we receive your sworn statement in proof of loss, if you have complied with all of the terms of this policy.

i. We will determine the amount of Actual Cash Value of covered property in the event of loss or damage as follows:
   (1) At Actual Cash Value as of the time of loss or damage, except as provided in (2) through (5) below.
   (2) "Stock" you have sold but not delivered, at the selling price less discounts and expenses you otherwise would have had.
   (3) Glass at the cost of replacement with safety glazing material if required by law.
   (4) Tenant's Improvements and Betterments at:
       (a) Actual Cash Value of the lost or damaged property if you make repairs promptly.
       (b) A proportion of your original cost if you do not make repairs within thirty (30) days of the loss. We will determine the proportionate value as follows:
           (i)    Multiply the original cost to you by the number of days from the loss or damage to the expiration of your lease; and
           (ii)   Divide the amount determined in (i) above by the number of days from the installation of improvements to the expiration of the lease. If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.
       (c) Nothing if others pay for repairs or replacement.
   (5) Valuable Papers and Records, including those which exist on electronic or magnetic media (other than prepackaged software programs), at the cost of:
       (a) Blank materials for reproducing the records; and
       (b) Labor to transcribe or copy the records when there is a duplicate.

6. OPTIONAL COVERAGE - REPLACEMENT COST

If shown in the Declarations, this Optional Coverage - Replacement Cost replaces section 4 above, and applies separately to each item of covered property, subject to any Coinsurance percentage stated in the Declarations.

a. Subject to the applicable Limits of Insurance and also subject to any coinsurance percentage stated in the Declarations, the amount we will pay the cost of repairing or replacing the lost or damaged covered property with other property of like kind and quality.

b. We will not pay you more than your financial interest in the covered property.

c. We shall have no liability to defend you against any claims or suits arising from claims of owners of any property.

d. We will commence such repair, rebuilding, or replacement within 90 days after we receive your sworn statement in proof of loss, if you have complied with all of the terms of this policy.

e. This Optional Coverage does not apply to:

Policy Number: PES-00006

    (1)  Contents of a residence;
    (2)  Manuscripts;
    (3)  Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac.

Such property will be valued at Actual Cash Value at the time of loss.

f.  You may make a claim for loss or damage covered by this insurance on an Actual Cash Value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an Actual Cash Value basis, you may still make a claim for replacement cost if you notify us of your intent to do so within 180 days after the Occurrence.

g.  We will not pay on a replacement cost basis for any loss or damage:
    (1)  Until the lost or damaged property is actually repaired or replaced; and
    (2)  Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

h.  We will not pay more for loss or damage on a replacement cost basis than the lesser of:
    (1)  The Limit of Insurance applicable to the lost or damaged property;
    (2)  The stated value for the Covered Location involved in the loss as stated in the most recent "Statement of Values" on file with us;
    (3)  The cost to replace, on the same premises, the lost or damaged property with other property:
        (a)  Of comparable material and quality; and
        (b)  Used for the same purpose; or
    (4)  The amount you actually spend that is necessary to repair or replace the lost or damaged property.

i.  The cost of repair or replacement does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair or any property.

j.  For any building constructed prior to 1950, replacement cost will be determined based upon the estimated cost to repair or replace a building having a similar purpose to such building that was constructed during the sixty months immediately preceding the date of the Occurrence.

## SECTION B. BUSINESS INCOME AND EXTRA EXPENSE

1.  SCOPE OF INSURANCE

a.  If a Limit of Insurance for Business Income and Extra Expense is included in the Declarations, we will pay for the actual loss of Business Income you sustain, in excess of the deductible stated in the Declarations, due to the necessary suspension of your "operations" during the "period of restoration;" however, the suspension must be caused by direct physical loss of or damage to your covered property as described in Section A, caused directly by or resulting directly from an Occurrence.

b.  We will not pay for such loss sustained during the first seven days following the Occurrence, and loss of Business Income during such seven day period will not be applied against the Business

Policy Number: PES-00006

Income deductible stated in the Declarations. We will only pay for loss of Business Income sustained by you in excess of the deductible stated in the Declarations during the twelve consecutive months immediately following the end of the first seven days following the Occurrence.

2. BUSINESS INCOME

Business Income means:

a. The Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred but for an Occurrence; plus

b. Your continuing normal operating expenses actually incurred, including payroll, during the "period of restoration", and

c. Includes "Rental Value".

3. BUSINESS INCOME COVERAGE EXTENSIONS

a. Extra Expense

(1) We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred but for an Occurrence.

(2) Except as set forth below, where used in this policy, the term Extra Expense means reasonable expenses incurred solely to avoid or minimize the suspension of your business and to continue your "operations:"

(a) At the Covered Locations; or

(b) If necessary, at replacement premises or at temporary locations, including:

(i) Relocation expenses;

(ii) Costs to equip (except equipment that is covered property under SECTION A - BUILDING AND PERSONAL PROPERTY) and operate the replacement or temporary locations, during the "period of restoration"; or

(iii) To otherwise minimize your loss of Business Income if you cannot continue your "operations" at the Covered Location(s).

(3) We will not pay as extra expense any amount you incur to replace any property if the property replaced is covered property under Section A.

(4) Extra Expense also does not include any amount incurred to construct, build out, decorate, or furnish replacement premises.

b. Civil Authority

We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the Covered Location(s) due to direct physical loss of or damage to property:

(1) Other than at the Covered Location(s), and

(2) Located within 500 yards of the Covered Location(s),

that is directly caused by or resulting from an Occurrence. This coverage will apply for a period of up to two consecutive weeks from the date of the Occurrence.

Policy Number: PES-00006

c. Extended Business Income

We will pay for the actual loss of Business Income, including "Rental Value", you incur during the period that:

(1) Begins on the date all covered property is actually repaired, rebuilt or replaced and "operations" are resumed or tenantability is restored; and
(2) Ends on the earlier of:
    (a) The date you could restore your "operations" or tenant occupancy with reasonable speed, to the condition that would have existed but for the Occurrence, or
    (b) 180 consecutive days after the date determined in (1) above.

4. BUSINESS INCOME LOSS AND EXTRA EXPENSE NOT COVERED BY THIS POLICY

a. We will not pay any amount you incur to replace any property if the property replaced is covered property under Section A.

b. Extra Expense also does not include any amount incurred to construct, build out, decorate, or furnish replacement premises.

c. We will not pay for any loss of Business Income caused by direct physical loss of or damage to Electronic Media and Records after the longer of:

(1) Sixty (60) consecutive days from the date of direct physical loss or damage; or
(2) The period, beginning with the date of direct physical loss or damage, necessary to repair, rebuild or replace, with reasonable speed and similar quality, other property at the Covered Locations due to loss or damage caused by the same occurrence.

Electronic Media and Records are:

    (a) Electronic data processing, recording or storage media such as films, tapes, discs, drums or cells:
    (b) Data stored on such media; or
    (c) Programming records used for electronic data processing or electronically controlled equipment.

Example A Covered Cause of Loss damages a computer on June 1. It takes until September 1 to replace the computer, and until October 1 to restore the data that was lost when the damage occurred. We will only pay for the Business Income loss sustained during the period June 1 - September 1. Loss during the period September 2 - October 1 is not covered.

5. LOSS PAYMENT - BUSINESS INCOME AND EXTRA EXPENSE

a. The amount of Business Income loss will be determined based on:

(1) The Net Income of your business before the direct physical loss or damage occurred;

Policy Number:  PES-00006

    (2)  The reasonably likely Net Income of your business if no loss or damage occurred;

    (3)  The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed immediately prior to the Occurrence; and

    (4)  Other relevant sources of information, including:

        (a)  Your financial records and accounting procedures;

        (b)  Bills, invoices and other vouchers; and

        (c)  Deeds, liens or contracts.

b.  The amount of Extra Expense will be determined based on all expenses that exceed the normal operating expense that would have been incurred by "operations" during the "period of restoration" if no direct physical loss or damage had occurred. We will deduct from the total of such expenses:

    (1)  The salvage value that remains of any property bought for temporary use during the "period or restoration" once "operations" are resumed; and

    (2)  Any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

    (3)  All necessary expenses that reduce the Business Income loss that otherwise would have been incurred.

c.  We will reduce the amount of your:

    (1)  Business Income loss, other than Extra Expense, to the extent you can resume your "operations," in whole or in part, by using damaged or undamaged property (including merchandise or "Stock") at the Covered Locations or elsewhere.

    (2)  Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

If you do not resume "operations", or you do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

## SECTION C. COINSURANCE

If a Coinsurance percentage is shown in the Declarations, the following condition applies:

1.  Buildings and Personal Property

We will not pay the full amount of any loss if the value of covered property at the time of loss multiplied by the Coinsurance percentage stated in the Declarations is greater than the Limit of Insurance for the covered property stated in the Declarations.  Instead, we will determine the most we will pay using the following steps:

    a.  Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;

    b.  Divide the Limit of Insurance of the Covered Property by the amount determined in step a;

    c.  Multiply the total amount of loss, before the application of any deductible, by the amount determined in step b; and

    d.  Subtract the deductible from the amount determined in step c.

Policy Number: PES-00006

We will pay the amount determined in step d, or the Limit of Insurance, whichever is less.

2. Business Income

    a. We will not pay the full amount of any loss if the Limit of Insurance for Business Income is less than the Coinsurance percentage shown for Business Income in the Declarations, multiplied by the sum of:

        (1) The Net Income (Net Profit or Loss before income taxes), and

        (2) All operating expenses, including payroll expenses, that would have been incurred (had there been no Occurrence) by your "operations" at the described premises for the 12 months immediately prior to the Occurrence.

    b. Instead, we will determine the most we will pay using the following steps:

        (1) Multiply the Net Income and operating expense for the 12 months following the inception, or last previous anniversary date, of this policy by the Coinsurance percentage;

        (2) Divide the Limit of Insurance for the described premises by the amount determined in step (1); and

        (3) Multiply the total amount of loss by the amount determined in step (2).

    We will pay the amount determined in step (3), or the Limit of Insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself

    c. This condition applies to all covered loss except Extra Expense Additional Coverage, including any coverage provided on a replacement cost basis.

Policy Number:  PES-00006

SECTION D. EXCLUSIONS

1.  This policy does not cover loss or damage caused directly or indirectly by any of the following:

a.  Ordinance or Law, meaning the enforcement of any ordinance or law:
(1)  Regulating the construction, use or repair of any property; or
(2)  Requiring the tearing down of any property, including the cost of removing its debris.

b.  Earth Movement, meaning any earth movement, such as an earthquake, landslide, mine subsidence or earth sinking, rising or shifting, unless caused directly by an Earthquake.

c.  Governmental Action, meaning seizure or destruction of any property by order of any governmental authority for any reason.

d.  Nuclear Hazard, meaning any nuclear reaction or radiation or radioactive contamination.

e.  Biological agents or chemical agents.

f.  Failure, impairment or malfunction, for any reason, of any:
(1)  Computer, or
(2)  Electronic data processing equipment, or
(3)  Computer or telephone system or network, including any servers, or
(4)  Electronic accounting machine, or
(5)  Means of electronic mail communications ("e mail"), or
(6)  Means of access to the internet, including any interruption of service from an internet service provider.

g.  Any computer virus or other source of computer failure, impairment or malfunction.

h.  Power Failure, meaning any failure of power or other utility service supplied to the Covered Locations, if the failure occurs away from the described premises.

i.  Water, meaning:
(1)  Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;
(2)  Mudslide or mudflow;
(3)  Water that backs up from a sewer or drain; or
(4)  Water under the ground surface pressing on, or flowing or seeping through:
(a)  Foundations, walls, floors whether paved or not;
(b)  Or Basements, whether paved or not; or
(c)  Doors, windows or other openings.

j.  Riot or Civil Commotion, including any looting.

k.  Sinkhole Collapse, meaning loss or damage caused by the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite.

Policy Number: PES-00006

l. Vandalism, meaning willful and malicious damage to, or destruction of, the described property.

m. Sprinkler Leakage, meaning leakage or discharge of any substance from any "Automatic Sprinkler System."

n. Dry rot, condensation, dampness, spoilage, decay, fungus, mold or mildew.

o. Any "Pollution Condition."

p. Any lead paint or lead paint products.

q. "Asbestos".

r. Hidden or latent defect or quality in covered property.

s. Contingent or Secondary Business Interruption, meaning loss that you suffer as a direct or partial result of physical loss or damage to property owned by persons or entities other than you.

By way of illustration, and not in limitation of the foregoing, if your Covered Location is located in New York and an Occurrence takes place in California, which causes physical loss or damage to property of others located in California, for example, a supplier of parts for products you manufacture, you will not be covered under this policy for any loss that you suffer as a result of such Occurrence.

2. We also will not pay for any loss or damage caused by or resulting from:

a. Artificially generated electrical current, including electric arcing that disturbs electrical devices, appliances or wires.

b. Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control.

c. The actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "Pollutants":
   (1) At or from any premises, site or location; or
   (2) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible.

d. Any loss, cost or expense arising out of any:
   (1) Request, demand or order that you or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "Pollutants";
   (2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of "Pollutants"; or
   (3) Any other "Environmental Remediation Costs."

Policy Number:  PES-00006

## SECTION E. COMMON POLICY CONDITIONS

1. ABANDONMENT

    a. There can be no abandonment of any property to us.

2. APPRAISAL

    a. If you and we disagree on the values of the covered property, your Business Income, Extra
    Expense or the amount of any loss or damage, either may make written demand for an appraisal of
    such values. In this event, each party will select a competent and impartial appraiser. The two
    appraisers will select an umpire. If they cannot agree, either may request that selection be made
    by a judge of a court having jurisdiction. The appraisers will state separately the value of the
    property, the amount of Business Income, Extra Expense and amount of loss or damage. If they
    fail to agree, they will submit their differences to the umpire. A decision agreed to by any two
    will be binding. Each party will:
    (1)  Pay its chosen appraiser; and
    (2)  Bear the other expenses of the appraisal and umpire equally.

    If there is an appraisal, we will still retain our right to deny the claim on the basis that it is not
    covered under the policy. No other disputes between you and us will be subject to this provision.

3. CANCELLATION

    a. You may cancel this policy by mailing or delivering to us advance written notice of cancellation.
    b. We may cancel this policy for any reason by mailing or delivering to you written notice of
    cancellation at least 30 days, 10 days if our reason for cancellation is your non-payment of any
    premium when due, before the effective date of cancellation. We will mail or deliver our notice to
    your last mailing address known to us.
    c. Notice of cancellation by you or us will state the effective date of cancellation. The policy period
    will end on that date.
    d. 100% minimum earned premium applies to this policy for any cancellation or exposure
    adjustment.
    e. The cancellation will be effective even if we have not made or offered a refund.
    f. If notice is mailed, proof of mailing will be sufficient proof of notice.

4. CHANGES

    This policy contains all the agreements between you and us concerning the insurance afforded. This
    policy's terms can be amended or waived only by endorsement issued by us and made a part of this
    policy.

Policy Number: PES-00006

5. <u>CONCEALMENT, MISREPRESENTATION OR FRAUD</u>

   a. This policy is void in any case of fraud by you at any time including fraud in any claim presented hereunder. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

     (1) This Policy;
     (2) The covered property or any Covered Location;
     (3) Your interest in the covered property; or
     (4) A claim under this policy.

6. <u>DUTIES OF THE NAMED INSURED IN THE EVENT OF LOSS OR DAMAGE</u>

You must see that the following are done in the event of loss or damage to covered property:

   a. Notify the police if a law may have been broken.
   b. Give us prompt notice of the loss or damage, including a description of the covered property involved.
   c. As soon as possible, give us a description of how, when and where the loss or damage occurred.
   d. Take all reasonable steps to protect the covered property from further damage.
   e. If feasible, set the damaged property aside and in the best possible order for examination. Also keep a record of your expenses for emergency and temporary repairs, for consideration in the settlement of the claim. This will not increase the Limit of Insurance.
   f. At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.
   g. Permit us to inspect the property and records proving the loss or damage. Also permit us to take samples of damaged property for inspection, testing and analysis.
   h. If requested, permit us to question you under oath at such times as may be reasonably required about any matter relating to this insurance or your claim, including your books and records. In such event, your answers must be signed
   i. Send us a signed, sworn statement in proof of loss containing the information we request to investigate the claim. You must do this within 30 days after our request. We will supply you with the necessary forms.
   j. Cooperate with us in the investigation or settlement of the claim,
   k. Resume all or part of your "operations" as quickly as possible.

7. <u>EXAMINATION OF YOUR BOOKS AND RECORDS</u>

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

8. <u>INSPECTIONS AND SURVEYS</u>

We have the right but are not obligated to:

   a. Make inspections and surveys at any time;
   b. Give you reports on the conditions we find; and
   c. Recommend changes.

Policy Number:  PES-00006

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public, and we do not warrant that conditions are safe or healthful; or comply with laws, regulations, codes or standards.

9. INSURANCE UNDER TWO OR MORE COVERAGES

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage. We may allocate such loss or damage to any of such coverages at our option and in our sole discretion.

10. KNOWLEDGE OR CONTROL

We will not pay for loss or damage while the chance of loss or damage is increased by any means within your knowledge or control.

11. LEGAL ACTION AGAINST US

No one may bring a legal action against us under this policy unless:

  a. There has been full compliance with all of the terms of this policy; and
  b. The action is brought within one (1) year after the Occurrence that is the subject of a claim.

12. MORTGAGE HOLDERS

Payments in respect of loss covered under Section A of this policy shall be to each mortgage holder shown in the Declarations in their order of precedence, as their interests may appear. A mortgage holder shall have the right to receive loss payment even if the mortgage holder has started foreclosure or similar action on the building or structure. At our option, we may pay to the mortgage holder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us. If we cancel this policy, we will give written notice to the mortgage holder at least 5 days before the effective date of cancellation. If we elect not to renew this policy, we will give written notice to the mortgage holder at least 5 days before the expiration date of this policy. The term "mortgage holder" includes a trustee.

13. NO BENEFIT TO BAILEE

Except as expressly set forth herein, no person or organization, other than you, having custody of covered property will benefit from this insurance.

14. OTHER INSURANCE

You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this policy. If you do, we will only pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this policy bears to the Limits of Insurance of all policies covering the loss on the same basis. If there is other insurance covering

Policy Number: PES-00006

the same loss or damage, other than that described above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, irrespective of whether you can collect on it, but we will not pay more than our applicable Limit of Insurance.

15. PREMIUMS AND STATEMENT OF VALUES

You:

a. Are responsible for the payment of all premiums;
b. Will be the payee for any return premiums we pay;
c. Are responsible for providing to us a revised "Statement of Values" for all Covered Locations if you wish to add an additional Covered Location, and otherwise in the event the value of one or more Covered Locations changes during the policy period.
d. May at your option provide us with a revised "Statement of Values" at more frequent intervals, but not more than monthly, prior to a loss.

Upon our receipt of any revised "Statement of Values" we shall recalculate your premium and adjust it pro rata for the remainder of the policy period. IN THE EVENT OF A LOSS, OUR LIABILITY WILL BE CALCULATED BASED UPON THE MOST RECENT "STATEMENT OF VALUES" ON FILE WITH US. We shall have the right at any time to perform our own appraisal of the value of a Covered Property, and to adjust your premium and amend the "Statement of Values" if an amendment is warranted.

16. RECOVERED PROPERTY

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to our Limit of Insurance.

17. SERVICE OF SUIT CLAUSE

a. In the event of our failure to pay any amount claimed by you to be due under this policy, we will submit at your request to the jurisdiction of any United States Federal District Court of competent jurisdiction within the United States. It is further agreed that service of process in such lawsuit may be made upon LeBoeuf, Lamb, Greene and MacRae, One Embarcadero Center, San Francisco, CA 94111, U.S.A., with a copy sent by facsimile to us.

b. Nothing in this condition constitutes or should be understood to constitute a waiver of our right to commence a lawsuit against you in any such court. We and you will comply with the final decision of such court, or the applicable United States Court of Appeals, or the United States Supreme Court, in the event of an appeal, in any lawsuit commenced by you or us solely to enforce the terms of this policy.

c. The above named are authorized and directed to accept service of process on our behalf in any such lawsuit and/or are authorized and directed upon your request, to give you a written

Policy Number: PES-00006

undertaking that they will enter a general appearance upon our behalf in the event such a lawsuit shall be instituted by you.

d. Further, pursuant to any statute of any state, territory or district of the United States which makes a provision, we will designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in such statute (the "Insurance Commissioner"), or their successor or successors in office, as our true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on your behalf arising out of this policy, and we designate the above named as the persons to whom the Insurance Commissioner is authorized to mail such process or a true copy thereof.

18. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

19. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

If any person or organization to or for whom we make payment under this policy has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. Notwithstanding the foregoing, you may waive your rights against another party in writing:

a. Prior to a loss to your covered property.
b. After a loss to your covered property only if, at time of loss, that party is one of the following:
   (1) Someone insured by this policy;
   (2) A business organization owned or controlled by you;
   (3) That owns or controls you; or
   (4) Your tenant.

20. VACANCY

We will not pay for any loss or damage if a building where loss or damage occurs has been "Vacant" or "Unoccupied" for more than 60 consecutive days before that loss or damage irrespective of whether such Vacancy or Unoccupancy begins before the inception of this policy. Buildings under construction are not considered "Vacant" or "Unoccupied."

SECTION F. DEFINITIONS

Where used in this policy the following terms shall have the meanings described in this Section F.

a. "Asbestos" means asbestos and includes any asbestos products, asbestos fibers, asbestos dust, and any other substance containing asbestos.

b. "Automatic Sprinkler System" means:

Policy Number: PES-00006

    (1) Any automatic fire protective or extinguishing system, including connected:
        (a) Sprinklers and discharge nozzles;
        (b) Ducts, pipes, valves and fittings;
        (c) Tanks, their component parts and supports; and
        (d) Pumps and private fire protection mains.

    (2) When supplied from an automatic fire protective system:
        (a) Non-automatic fire protective systems; and
        (b) Hydrants, standpipes and outlets.

c. "Covered Location(s)" shall mean the premises listed in the Declarations page of this policy, as may be amended from time to time by an endorsement to this policy.

d. "Environmental Remediation Costs" means any costs arising from or in connection with Pollutants, including but not limited to:

    (1) The costs of testing for, sampling, investigation, remedial design, feasibility studies and the remediation and monitoring of contamination of land, soil, debris, surface water, groundwater, or sediment, and including costs for engineering, water supply replacement, monitoring air quality, community relations, site management, costs attendant to business interruption during remediation, and costs incurred in connection with compliance with financial responsibility requirements, such as premiums for surety bonds, and permitting and licensing costs;

    (2) Damages claimed by any person or entity;

    (3) Attorneys' and experts' fees, expenses, and court costs for responding to, investigating, defending against, and/or negotiating a settlement, of any claim;

    (4) Costs actually paid to the government of either the United States, Canada, or any state or province thereof, or any political subdivision thereof, for which you are liable, including government oversight costs;

    (5) Damages for diminution in value of real property including the cost of appraising such property;

    (6) Natural resource damages;

    (7) Judgments, fines and penalties, including awards of attorneys' and experts' fees and costs of responding to claims for equitable relief.

e. "Finished Stock" means "Stock" you have manufactured. "Finished Stock" also includes whiskey and alcoholic products being aged. "Finished stock" does not include "Stock" you have manufactured that is held for sale on the premises of any retail outlet insured under this policy.

f. "Hurricane" means a storm system that has been declared to be a hurricane by the National Hurricane Center of the U.S. National Weather Service, and designated as such by the prefix "Hurricane" and followed by a name.

Policy Number: PES-00006

g. "Named Storm" means:
  (1) a storm that is identified and named as a tropical storm or "Hurricane" by the U.S. National Weather Service; and
  (2) that s identified as a tropical storm or "Hurricane" at the time of landfall in the "State"" in which the your Covered Locations are located.

h. "Operations" means your business activities occurring at the Covered Location(s) and the tenantability of the covered Location(s), if coverage for Business Income including "Rental Value" applies.

i. "Period of Restoration" means the period of time that:

  (1) Begins with the commencement of the Occurrence; and
  (2) Ends on the earlier of:
    (a) The date when the covered property at the Covered Locations should be repaired, rebuilt or replaced with reasonable speed and similar quality; and
    (b) the end of twelve consecutive months immediately following the Occurrence.

  "Period of restoration" does not include any increased period required due to the enforcement of any ordinance or law that:

  (1) Regulates the construction, use or repair, or requires the tearing down of any property; or
  (2) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "Pollutants."

  The expiration date of this policy will not terminate the "period of restoration."

j. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, hazardous material, or hazardous substance, including smoke, vapor, soot, dust, fumes, metals, wastewater, debris, acids, alkalis, chemicals and "Waste". "Waste" includes materials to be recycled, reconditioned or reclaimed, and includes petroleum products.

k. "Pollution Condition" means the presence of Pollutants in, at, on, or under land, soil, or groundwater, sediments, or any watercourse or body of water.

l. "Rental Value" means:

  (1) Total anticipated rental income from tenant occupancy of the premises described in the Declarations as furnished and equipped by you, and
  (2) the amount of all charges which are the legal obligation of the tenant(s) and which would otherwise be your obligations, and
  (3) Fair rental value of any portion of the Covered Location(s) which is occupied by you.

m. "State" means any state of the United States of America and includes the District of Columbia and Puerto Rico.

Policy Number:  PES-00006

n.  "Statement of Values" means the schedule of total insurable values for each Covered Location insured under this policy based upon Actual Cash Value or replacement cost, as applicable, and on file with us.

o.  "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

p.  "Tenant's Improvements and Betterments" are fixtures, alterations, installations or additions:
(1)  Fixed to and made a part of a building located at Covered Locations, that you occupy as a tenant; and
(2)  that you acquired or made directly at your expense but cannot legally remove without the landlord or owner's consent.

q.  "Unoccupied" means containing contents pertaining to the occupancy of the building while operations or other customary activities are suspended.

r.  "Vacant" means containing no contents pertaining to operations or activities customary to occupancy of the building.

# General Endorsement

Policy Number: PES-00006
Endorsement Number: 1

| Attached to and Forming Part of Policy | Endorsement Effective | Insured | Producer |
|---|---|---|---|
| PES-00006 | 09/16/2005 | NRI Three, LLC | Program Underwriters, Inc. |

## Schedule of Locations Covered

The following locations are covered under this Policy at the coinsurance percentages shown below:

| Loc | Address | Co-insurance |
|---|---|---|
| 1. | 18441 NW 2nd Avenue, Miami, FL  33169 | 80 |
| 2. | 18425 NW 2nd Avenue, Miami, FL  33169 | 80 |
| 3. | 18475 NW 2nd Avenue, Miami, FL  33169 | 80 |
| 4. | 111 NW 183rd Street, Miami, FL  33169 | 100 |

All other terms and conditions remain the same.

NOTHING HEREIN SHALL BE HELD TO VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, CONDITIONS OR LIMITATIONS OF THE POLICY TO WHICH THIS ENDORSEMENT IS ATTACHED OTHER THAN AS ABOVE STATED.

Date:     November 15, 2005                     By: _____ Issued with original policy
                                                              (Authorized Representative)

# General Endorsement

Policy Number:  PES-00006
Endorsement Number: 2

| Attached to and Forming Part of Policy | Endorsement Effective | Insured | Producer |
|---|---|---|---|
| PES-00006 | 09/16/2005 | NRI Three, LLC | Program Underwriters, Inc. |

### Amending Cause of Loss to Wind, Wind-driven Rain, and Hail.

It is hereby understood and agreed that

The covered cause of loss under this policy is amended from "Named Windstorm" to "Wind, Wind-driven Rain, and Hail"

All other terms and conditions remain the same.

NOTHING HEREIN SHALL BE HELD TO VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, CONDITIONS OR LIMITATIONS OF THE POLICY TO WHICH THIS ENDORSEMENT IS ATTACHED OTHER THAN AS ABOVE STATED.

| Date: | November 15, 2005 | By: | Issued with original policy |
|---|---|---|---|
| | | | (Authorized Representative) |

# Mortgagee Endorsement

Policy Number: PES-00006
Endorsement Number: 3

| Attached to and Forming Part of Policy | Endorsement Effective | Insured | Producer |
|---|---|---|---|
| PES-00006 | September 16, 2005 | NRI Three, LLC | Program Underwriters, Inc. |

a.  The term mortgageholder includes trustee.
b.  We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations or in this endorsement, in their order of precedence, as interests may appear.
c.  The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.
d.  If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgageholder will still have the right to receive loss payment if the mortgageholder:
    (1) Pays any premium due under this Coverage Part at our request if you have failed to do so;
    (2) Sublimits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so;
    (3) Has notified us of any change in ownership, occupancy or substantial change in risk know to the mortgageholder.
e.  If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:
    (1) The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and
    (2) The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

    At our option, we may pay to the mortgageholder the whole principal of the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

f.  If we cancel this policy, we will give written notice to the mortgageholder at least:
    (1) 10 days before the effective date of cancellation if we cancel for you nonpayment of premium; or
    (2) 30 days before the effective date of cancellation if we cancel for any other reason.

g.  If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

MORTGAGEE(S):

| Location # | Address or Property Description | Mortgagee and Contact Address |
|---|---|---|
| 1. | 18441 NW 2nd Avenue, Miami, FL 33169 | Commercial Bank of Florida, A Florida Banking Corp ISAOA/ATIMA 1550 SW 57th Avenue Miami, FL  33144 |
| 2. | 18425 NW 2nd Avenue, Miami, FL 33169 | Same |
| 3. | 18475 NW 2nd Avenue, Miami, FL 33169 | Same |
| 4. | 111 NW 183rd Street, Miami, FL 33169 | Same |

NOTHING HEREIN SHALL BE HELD TO VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, CONDITIONS OR LIMITATIONS OF THE POLICY TO WHICH THIS ENDORSEMENT IS ATTACHED OTHER THAN AS ABOVE STATED.

Date: _____November 15, 2005_____     By: _____**Issued with original policy**_____
                                                       (Authorized Representative)



GAB Robins North America
PO Box 491450
Ft Lauderdale, FL   33319
(954) 735-2901

July 2, 2006

TO: NRI Three
633 NE 167th Street
Suite 301
Miami Beach, FL 33162

c.c.

Zevuloni & Assoc.
Joseph Shubert
6240 N. Andrews Ave.
Ft. Lauderdale, FL 33309

TMK Risk Management
PO Box 266736
Weston, FL 33326

FROM:  H. Ted Watkins

RE:   Claim #: 54CAT20051464
Date of Loss: 10/24/2005
Insured: NRI Three, Inc.
GAB File #:  23158-02351
Policy No.: PES00006
Policy Dates: 09-16-05 to 06-16-06

Sir:

The above referenced policy of insurance lists four (4) loss locations; 18441 NW 2nd Ave., 18425 NW 2nd Ave., 18475 NW 2nd Ave. and 111 NW 183rd Street in Miami, Florida.

An issue was raised regarding coverage for another building on the 2nd Ave. premises addressed as 18405 NW 2nd. Ave. and referred to as the "Bank Building". In a memo from N.R. Group dated 02-03-06, Nir Shoshani stated: "The 18475 NW 2nd Ave building, should be 18405 NW 2nd Ave (the legal address). 18475 does not exist." The memo requested an immediate correction in the policy.

The issue has been thoroughly researched by Glencoe Group. Their determination is that the four (4) locations listed in the first paragraph of this correspondence are the structures that were insured under this policy on the date of the loss. The so called "Bank Building" at 18405 NW 2nd. Ave. was not an insured structure. Consequently, they have declined to include any damages to that structure in this claim.

EXHIBIT

B

The issue of the related damage to the roof covering was evaluated by a roofing consultant retained by the insurance company -- Jack Brown. He concluded there were minor damage impact points on the roofs of the four buildings and they can be repaired for not more that $5,000.00 per roof.

As I understand it, there were repairs completed on the roof of the stairwell tower on the 183rd street building, several large A/C units were repositioned on another building, there were repairs to the drop-in acoustic ceiling panels on the interior of the four buildings and the insured completed other wind damage repairs. I am unable to evaluate the loss until I receive documentation on these expenditures. I have anticipated a loss summary from Mr. Shubert of Zevuloni & Assoc. on the four buildings. I suspect he has been awaiting a decision on the location coverage issue before continuing.

The policy deductibles on the four (4) buildings listed above (in order) are: $110,000.00, $110,000.00, $27,000.00 and $175,000.00. To my knowledge -- based on the discussions with Mr. Shubert and the analysis by the roofing consultant -- the covered damages to each of the buildings appear to be less than the deductible. I acknowledge that I am not in possession of the repair invoices and I will review any documents I receive. However, at this point the claim appears to be less than deductible and no payment is indicated.

Please feel free to contact me at any of the numbers listed below with your concerns, comments, or documents.

Sincerely:


H. Ted Watkins
Adjuster
Cell 541-944-1983
Home/Office  541-826-4174
Fax  503-296-5627
wtedandpam@aol.com

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

NRI 3 LLC a/k/a NRI THREE LLC,

GENERAL JURISDICTION DIVISION

    Plaintiff,

CASE NO.:

v.

*Please Stamp and Return*

LANTANA INSURANCE LTD,

THE ORIGINAL FILED

    Defendant.

ON JUL 01 2010

IN THE
CIRCUIT C

## PLAINTIFF'S FIRST REQUEST FOR PRODUCTION TO DEFENDANT

Pursuant to Rule 1.350, Florida Rules of Civil Procedure, Plaintiff, NRI 3 LLC a/k/a NRI Three LLC ("NRI"), requests Defendant, Lantana Insurance LTD (the "Insurance Company"), to produce for inspection and copying the following documents at the offices of the undersigned or, in the alternative, that it mail copies of the same to the undersigned within 45 days after service hereof.

### Definitions and Instructions

A.  The term the "NRI 3 LLC," "NRI Three LLC," or "Plaintiff" means Plaintiff, NRI 3 LLC a/k/a NRI Three LLC, including all of its past and present affiliates, subsidiaries, and parent, and all their respective officers, directors, shareholders, partners, employees, agents, representatives, attorneys, and any other person acting or purporting to act on any of their behalf.

B.  The term "Insurance Company" means Defendant, Lantana Insurance LTD, including all of its past and present affiliates, subsidiaries, and parent, and all their respective officers, directors, shareholders, partners, employees, agents, representatives, attorneys, and any other person acting or purporting to act on any of

their behalf.

C. The term "Policy" shall mean the policy number PES00006, which was issued by the Insurance Company and is the subject of the Complaint.

D. The term "Property" shall mean Plaintiff's property located at 18441 NW 2nd Avenue, Miami, FL 33169, 18425 NW 2nd Avenue, Miami, FL 33169, & 18475 NW 2nd Avenue, Miami, FL 33169, and 111 NW 183rd Street, Miami, FL 33169.

E. The term "18441 Building" shall mean Plaintiff's property located at 18441 NW 2nd Avenue, Miami, FL 33169.

F. The term "18425 Building" shall mean Plaintiffs' property located at 18425 NW 2nd Avenue, Miami, FL 33169.

G. The term "18475 Building" shall mean Plaintiff's property located at 18475 or 18405 NW 2nd Avenue, Miami, FL 33169.

I. The term, "Claim" shall mean claim number 54CAT20051464, for the loss to the Plaintiffs' Property.

J. "You" or "Your" shall mean Defendant, the Insurance Company, including its agents, employees or other servants (including independent contractors and subcontractors), attorneys, outside advisors or consultants, investigators, representatives of any kind and any other person acting on its behalf or for its benefit, either directly or indirectly.

K. The term "communication" means the conveyance of information or knowledge by writing, orally or otherwise and includes, but is not limited to, writings, letters, memoranda, reports, notes, telegrams, interoffice communication electronic mail, audiotapes, videotapes, and computer programs and any form of electromagnetic

2

Higer Lichter & Givner

storage.

L.   The term "document" means   and includes any kind of written, typed, electronically produced or recorded or otherwise recorded and any graphic matter, however produced or reproduced, of any kind or description, whether sent or received, and every record of every type, including originals, non-identical copies and drafts, and both sides of any documentation where information appears on both sides, and including but not limited to: letters, correspondence, memoranda, meeting transcripts or minutes, public filings or tax returns, papers, books, telegrams, bulletins, notices, announcements, instructions, charts, manuals, brochures, schedules, cables, telex messages, notes, notations, accountants' working papers, transcriptions, agendas, reports, recordings of telephone or other conversations, of interviews, of conferences or of meetings, telephone messages, diaries, indices, books, reports, ledgers, working papers, invoices, worksheets, receipts, computer printouts, financial statements, schedules affidavits, contracts, canceled checks, statements, transcripts, magazine or newspaper articles, periodicals, releases and any and all drafts, alterations and modifications, changes and amendments of any of the foregoing, whether handwritten, printed or electronically prepared, filed or stored, affidavits, statements, summaries, opinions, reports, studies, analysis, evaluations, contracts, agreements, journals, statistical records, calendars, appointment books, diaries, lists, tabulations, sound recordings, computer print-outs, data processing input and output, microfilms, newspapers, magazines, books, periodicals or press releases, including information stored on any electromagnetic storage device, any written, printed, typed, recorded, or graphic matter, however produced or reproduced or stored to which you have or had

Higer Lichter & Givner

access. If any responsive information or documentation is stored on computer, then print out a hard or paper copy of such information or documentation or download such information or documentation to a floppy disk. "Document" shall also be deemed to include copies of documents even though the originals are not in your possession, custody, or control, every copy of a document which contains handwritten or other notations or which otherwise does not duplicate the original of any other copy, and all attachments to any document. "Document" shall also be deemed to include any summary of a document or documents called for hereafter.

M. As used herein the singular shall include the plural, the plural shall include the singular, and the masculine, feminine, and neuter shall include each of the other genders.

N. The terms "and" as well as "or" shall be construed disjunctively as well as conjunctively as necessary to make the request inclusive rather than exclusive. The term "all" means "any and all." The term "each" means "each and every," and the term "every" means "each and every."

O. The terms "refer" or "relate to" mean setting forth, pertaining to, memorializing, constituting, embodying, discussing, analyzing, reflecting or otherwise concerning.

P. "Relating to" means embodying, pertaining to, concerning, involving, constituting, comprising, reflecting, discussing, evidencing, referring to, consisting of, or having any logical or factual connection whatever with the subject matter in question.

Q. The term "Identify," when used with reference to a natural person, means state:

4

Higer Lichter & Givner

(1)  his/her full name and address (or, if the present address is not known, his last known address);

(2)  the full name and address of each of his/her employers, each corporation of which he/she is an officer or director and each business in which he or she is a principal;

(3)  his/her present (or, if the present is not known, his last known) position and his position or positions at the time of the act to which the response relates; and

(4)  such other information sufficient to enable Defendant to identify the person.

R.  "Identify," when used with reference to any entity other than a natural person,

means:

(1)  state the full name of the entity, the type of entity (e.g., corporation, partnership, etc.), the address of its principal place of business, its principal business activity, and if it is a corporation, the jurisdiction under the laws of which it has been organized and the date of such organization.

S.  "Identify," when used with reference to a document or written communication,

means state:

(1)  its nature (e.g., letter, telegram, floppy disc, computer printout, memorandum, chart, report or study), date, author, date and place of preparation and the name and address of each addressee, if there is an addressee;

(2)  the identity of each signer to the document or communication;

(3)  the title or heading of the document or communication;

(4)  its substance;

(5)  its present (or, if the present is not known, the last known) location and custodian;

(6)  the identity of each person to whom a copy was sent and each date of its receipt and each date of its transmittal or other disposition by (i) respondent and (ii) any other person (naming such other person)

5

Higer Lichter & Givner

who, at any time, either received, transmitted or otherwise disposed of such document or communication and each copy thereof; and

(7)    the circumstances of each such receipt and each transmittal or other disposition, including identification of the person from whom received and the person to whom transmitted.

T.   "Identify," when used with reference to an oral transaction or oral communication, means state:

(1)    its nature (e.g., telephone call, conversation in person, etc.);

(2)    the date and place thereof;

(3)    the identity and address of each person participating therein, present during or witness to any part thereof; and

(4)    identify each document in which such transaction or communication was recorded, described or referred to.

U.   If you claim that the attorney-client or other privilege or attorneys' work product doctrine is applicable to any document the identification of which is sought by these requests, then with respect to each such document, state its date, author(s), recipient(s), present and all previous custodians, location, subject matter, and sufficient additional information to explain the claim of privilege and to enable adjudication of the propriety of that claim.

V.   If you claim that the attorney-client or other privilege or the attorneys' work product doctrine is applicable any event or occurrence including any oral communication, the identification of which is sought by these requests, then with respect to each such event or occurrence, state its date, place and length, identify all persons present at all or any part of the event or occurrence; identify all documents that record, refer, or relate to the event or occurrence; state the subject matter of the event

6

Higer Lichter & Givner

or occurrence; and provide sufficient additional information to explain the claim of privilege and to enable adjudication of the propriety of that claim.

W. If any document the identification of which is sought by these requests has been destroyed, then state the date and circumstances of its destruction, and identify the person who destroyed the documents and the person who ordered its destruction.

### Items to be Produced

1.　　The entire claim file relating to the subject matter of this litigation, including, but not limited to, local, regional, and home office files, cover to cover, including all original jackets and everything contained within said files through the present.

2.　　The entire underwriting file relative to the insurance which is the subject matter of this litigation, cover to cover, including all original jackets and everything contained therein.

3.　　All statements taken of Plaintiff.

4.　　All statements taken of all independent witnesses or other persons by the Insurance Company.

5.　　All documents reflecting payments made by Plaintiff for the premiums for the Policy.

6.　　All documents reflecting communications between you and the Plaintiff.

7.　　All photographs and videotapes of the Property.

8.　　All documents submitted to you by the Plaintiff.

9.　　All documents reflecting communications between you and any insurance agent or broker or underwriter related to the Policy.

7

Higer Lichter & Givner

10.   All diagrams, sketches and other drawings depicting the Property.

11.   All reports relating to the damage to the Property.

12.   All estimates relating to the damage to the Property.

13.   All documents relating to assessments as to the damage of the Property.

14.   All documents reflecting payments you have made relating to damage to the Property.

15.   All documents relating to the coverages afforded to Plaintiffs by the Policy.

16.   All civil remedy notice letters filed against you within the past five (5) years.

17.   All documents sent to and received from the State of Florida, Insurance Commissioner's Office n/k/a the Department of Financial Affairs relating to the civil remedy notice letters referenced in request number 16.

18.   All documents relating to your compliance with Florida Statute §624.155, common law bad faith and/or performance of good faith duties in this matter.

19.   All documents relating to your underwriting policies in effect at the time the insured's Policy was underwritten.

20.   All documents relating to your decision not to pay the insured's Claim.

21.   All documents to and from adjusters and/or appraisers relating to the Claim in this matter.

22.   Your claims manual on processing, investigating, evaluating and payment of water intrusion claims.

23.   Your claims manual on processing, investigating, evaluating and payment of hurricane claims.

8

Higer Lichter & Givner

24.     Your claims manual on processing, investigating, evaluating and payment of bacteria, mold and fungus claims.

25.     All photographs, inspection reports or other documents relating to the condition of the Plaintiff's Property prior and subsequent to Plaintiff's Claim.

26.     All documents you rely on to support your correspondence denying coverage for the damage to the 18475 Building dated July 2, 2006.

27.     All documents you rely on to support your correspondence denying Plaintiff's claim for the 111, 18441 and 18425 Buildings dated July 2, 2006.

Higer Lichter & Givner, LLP
18305 Biscayne Blvd., Suite 402
Aventura, FL 33160
Telephone: 305-933-9970
Facsimile : 305-933-0998

By: _____
Michael J. Higer
Florida Bar No.: 500798
Valorie S. Chavin
Florida Bar No.: 14226

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1st day of July 2010, a true and correct copy of the foregoing was delivered to the process server with the Complaint for service upon Defendant.

_____
Valorie S. Chavin

9

Higer Lichter & Givner